An appropriate order may be submitted.

**Jacob I. PARKER, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 80–C–1232–S.

United States District Court, N. D. Alabama, S. D.

Sept. 29, 1981.

---

R. Michael Booker, Birmingham, Ala., for plaintiff.

Frank W. Donaldson, U. S. Atty., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

CLEMON, District Judge.

Plaintiff Jacob I. Parker seeks judicial review of a final decision by the Secretary of Health and Human Services ("the Secretary") denying him disability insurance benefits.

On September 14, 1979 Parker filed an application for a period of disability and disability insurance benefits from August 27, 1979. Parker claimed disability due to chest pains, black-outs, arthritis, peptic ulcers, and nervousness. On October 11–12, 1979 disability determination examiners concluded that Parker was not disabled, and they diagnosed his condition as pansinusitis and hypertension. His claim for disability insurance benefits was accordingly denied. Parker requested a reconsideration, and alleged that "I am still not able to work. I still have fainting spells and have pain in my chest and shoulder. I have a lot of swelling in my ankles to where I cannot walk". On January 22, 1980, the claim for reconsideration was denied.

Upon appeal, and after a hearing, an administrative law judge ("ALJ") of the Bureau of Hearings and Appeals determined that Parker was not disabled within the meaning of the Social Security Act. The Appeals Council affirmed the ALJ on July 15, 1980; and Parker thereafter supplemented the record with a Physical Capacity Evaluation Form. After considering the evaluation, the Appeals Council "... decided that there [was] no regulatory basis for vacating its previous action and reopening the administrative law judge's decision". Following this final decision by the Secretary, Parker commenced this action.

The ALJ found, and substantial evidence supports the following:

"1. The [Plaintiff] met the special earnings requirements of the Act on August 27, 1979, the date the plaintiff stated he became unable to work, and continues to meet them through September 30, 1984.

2. [Plaintiff] has the following impairments: post-transurethral resection of the prostate glands, post-bilateral vasectomy, carcinoma of the prostate, chronic sinusitis, and post sinus surgery."

At issue is the question of whether substantial evidence supports the following findings by the ALJ:

"3. The [plaintiff] has the residual functional capacity to perform work-related functions except for work involving more than "light work".

4. The [plaintiff's] former work as a security guard did not require more than "light work".

5. The [plaintiff's] impairments do not prevent him from performing his former work as a security guard".

Parker is fifty-eight years old, and he completed the ninth grade. He served in the United States Army during World War II. On September 27, 1945 he started working at the Anniston Army Depot as a spray painter; he held this position for twenty-eight years—until April 2, 1973.[1] On the latter date, he was involuntarily separated from his position and placed on a disability retirement by the Civil Service Commission. He was determined to be

"... unable to perform the duties of the position that require heavy lifting, moderate carrying, reaching above shoulders, use of fingers, both hands required, standing, crawling, kneeling and climbing, requiring the use of both legs".

and no other work was available for him at the Anniston Army Depot. He now receives $549 per month as Civil Service disability retirement pay.

---

1. Not without significance, the Disability Determination Unit of the Social Security Administration found that Parker's vocational background was that of a painter. Parker testified that his only skill was spray painting.

In 1973, Parker initially applied for social security disability benefits. His application was denied because he did not meet the earnings requirement of the Social Security Law at the time.

Parker secured employment with Pinkerton's, Inc., as a security guard on March 14, 1974, and he held this position for roughly two and a half years. He testified before ALJ that he was assigned to Simpson Hospital. While working this job, he experienced pain in his legs—to the point that he had great difficulty in walking. According to his testimony, he could not work this job; and since Pinkerton's did not have another job for him, he obtained a security guard position at Burns, Inc. The Burns position was a temporary job, which apparently ran out after he had worked it for approximately six months.

The record reflects that Parker next worked, for roughly a year and a half, as a security guard with Eagle Security Service. During this time, Parker was hospitalized on two separate occasions—once for a two-week period, and again for a period of one week. Parker was first hospitalized at Jacksonville Hospital, and a physical examination disclosed a "marked tenderness over the right knee with some swelling"; and it was the physician's impression that Parker had "severe bursitis of the right knee". On the second hospitalization in 1977, Parker's condition was diagnosed as "osteoarthritis, petit mal seizures, and congestive heart failure". On July 26, August 8, August 19, September 14, and October 10, 1977 Parker visited his personal physician, Dr. John Sherrer, and complained, *inter alia*, of swollen and painful legs and knees.

In 1978 and 1979, Parker continued to complain of chest, feet and shoulder pain in office visits to his personal physician.

Parker last worked as a security guard at Dynamic Security, Inc., for roughly five months in 1979.

Parker was hospitalized for eight days in November, 1979, at Jacksonville Hospital and for a like period of time in the same month at the Alabama Regional Medical Center for prostate trouble. He underwent surgery for carcinoma of the prostate gland.

In 1980, Parker was hospitalized at Stringfellow Memorial Hospital in Anniston for twelve days in February and at the Veterans Administration Hospital in Birmingham for twenty-five days in May; and again his condition was diagnosed as "acute and chronic sinusitis" and "carcinoma of the prostate", and "left ventricular dysfunction, compensated".

At the hearing before the ALJ, Parker testified that he could no longer work as a security guard because his legs would swell after standing on them for ten consecutive minutes or more. He further testified that he had dizzy spells "all the time"; and that in the week preceding the hearing (during which he was hospitalized), he had had a blackout and fallen to the floor. In his judgment, his legs are his most severe impairment. He testified that his personal physician had advised him to walk as little as possible; and that another doctor had advised him against driving and lifting anything. He was still under the treatment of doctors, and he was taking daily medication for sinusitis and epilepsy. Moreover, he testified that his feet were in a worse condition at the time of the hearing than they had been when he last worked as a security guard. The ALJ did not find that Parker's testimony was not credible.

Parker's testimony was buttressed by that of his wife. Mrs. Parker testified that her husband is vulnerable to unexpected dizzy spells at any time: "A lot of time he be staggering and I catch him". She stated additionally that sometimes when he gets out of bed, he falls on the floor. There was no adverse credibility finding concerning Mrs. Parker's testimony.

In the judgment of his personal physician, Parker can neither stand and walk nor sit and work for as much as six out of 8 hours in a normal work day.[2] Further, in

2. The ALJ did not have the benefit of Dr. Sherrer's functional capacities evaluation. The Appeals Council did not credit the evaluation because "... he does not provide complete and specific clinical findings to support his opinion".

Dr. Sherrer's opinion, Parker is restricted in the following movements: pushing and pulling, climbing and balancing, gross manipulation (grasping, twisting, and handling), fine manipulation (finger dexterity), bending and/or stooping, reaching, operating motor vehicles, and working with or around hazardous machinery. In short, Dr. Sherrer's functional capacities evaluation leads inescapably to the conclusion that Parker retains no residual abilities to perform work related functions. There is no other functional capacity evaluation in the record; and there is no expert vocational testimony in the record.

The administrative law judge apparently based his conclusion that Parker could engage in light work on the medical opinion of Dr. David Schroeder and Dr. Arthur F. Toole. Dr. Schroeder's conclusion was that he ". . . cannot honestly say that [Parker] is physically unable to be gainfully employed at this time, *on the basis of any underlying cardiac or pulmonary disease*". (emphasis added). This opinion is a non sequitur, for Parker is claiming disability based on the condition of his legs and his constant blackouts.

Dr. Toole's conclusions are summarized:
"Physically [Parker] has healed well from his sinus problems and, while he still complains of stuffiness, I can find very little obstruction on examination. *I don't think that sinusitus and nasal obstruction per se is a disabling condition* in the usual sense of the word *unless it is chronic to the point of constant pain* or unless there is some job requirement for the sensation of smell." (emphasis added).

Of course, the other evidence in the record indicates that Parker complained of constant pain. Dr. Toole recommended that another doctor be consulted concerning Parker's workload tolerance; and, as stated earlier, an evaluation of precisely the type recommended yielded the conclusion that Parker is in fact disabled.

Upon a review of the entire record, the Court finds a lack of substantial evidence to support the Secretary's decision that Parker

has the residual functional capacity for light work, and that Parker's impairments do not preclude his performance of his former work as a security guard. Accordingly, by separate order, the decision of the Secretary will be REVERSED and REMANDED for proceedings not inconsistent with this opinion.